**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DAVID POOR,                                    )
                                               )
      Plaintiff(s),                        )
                                               )
      vs.                                  )        Case No. 4:22-CV-729 SRW
                                               )
KILOLO KIJAKAZI,                               )
Commissioner of Social Security               )
Administration,                               )
                                               )
      Defendant(s).                        )

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 17. Defendant filed a Brief in Support of the Answer. ECF No. 20. Plaintiff filed a Reply.

ECF No. 21. The Court has reviewed the parties' briefs and the entire administrative record,

including the transcripts and medical evidence. Based on the following, the Court will affirm the

Commissioner's decision.

## I.    Factual and Procedural Background

On November 12, 2019, Plaintiff David Poor protectively filed an application for

disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.* with an alleged onset date

of April 26, 2017. Tr. 101, 201-06. Plaintiff's application was denied on initial consideration and

reconsideration. Tr. 102-20, 124-27, 129-38, 140-43. On March 18, 2021, he requested a hearing

before an Administrative Law Judge ("ALJ"). Tr. 144-45. On July 27, 2021, Plaintiff amended his alleged onset date to September 16, 2019. Tr. 227.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on August 5, 2021. Tr. 63-100. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") James Israel, LPC, CVE, CRC. *Id*. at 615-18. On September 1, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 11-28. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 195-97. On April 6, 2022, the Appeals Council denied Plaintiff's request for review. Tr. 1-10. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

2

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

3

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2025. Tr. 13. Plaintiff has not engaged in substantial gainful activity since September 16, 2019, the amended alleged onset date. *Id*. Plaintiff has the severe impairments of "cervical spine degenerative disc disease and obesity." Tr. 13-15. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 15-16. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except [he] can frequently climb ramps and stairs, balance, stoop, kneel, and crouch. The [Plaintiff] can occasionally climb ladders, ropes, or scaffolds; and crawl. The [Plaintiff] can occasionally reach overhead bilaterally. The [Plaintiff] must avoid jobs exposing a person to whole body vibration and avoid working at unprotected dangerous heights and around unprotected dangerous machinery.

Tr. 16. The ALJ found Plaintiff is unable to perform any past relevant work, including the composite job of journey maintenance and equipment operations, assembler of truck, and batcher lab technician. Tr. 21. The ALJ further found Plaintiff was born on July 14, 1960 and was 59

years old, which is defined as an individual of advanced age, on the amended alleged disability onset date. The ALJ acknowledged Plaintiff subsequently changed age category to closely approaching retirement age. *Id.* Plaintiff has at least a high school education. *Id.*

The ALJ determined the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills. *Id.* Relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as assembler (*Dictionary of Occupational Titles* ("*DOT*") No. 709.684-014, with approximately 21,000 positions nationally), packer (*DOT* No. 920.587-018, with approximately 35,000 positions nationally), and warehouse worker (*DOT* No. 922.687-058, with approximately 25,000 positions nationally). Tr. 21-22. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from September 16, 2019 through the date of his decision, issued on September 1, 2021. Tr. 23.

## IV.    Discussion

Plaintiff argues the ALJ erred in finding he could perform medium exertional work with additional limitations and failed to provide adequate reasons for discounting the opinions of his physician, Dr. Joseph Yazdi. Plaintiff points to Dr. Yazdi's treatment notes as well as opinions offered by orthopedist, Dr. David Minges, to argue the ALJ should have placed greater limitations upon his RFC. Specifically, Plaintiff asserts the medical records of these two physicians showed the opposite of normal musculoskeletal and neurological findings.

In response, the Commissioner contends the ALJ appropriately assessed the persuasiveness of Dr. Yazdi's opinions, including the supportability and consistency of his

records compared to his own observations, the opinion of other medical examiners, and Plaintiff's own reports of his daily activities and abilities. The Commissioner asserts the ALJ supported his opinion with substantial evidence in determining Plaintiff's RFC.

In making the RFC determination, the ALJ first acknowledged and summarized Plaintiff's own description of his medical conditions. Plaintiff testified that in April of 2017, he was physically attacked by a co-worker, which caused severe injuries requiring two surgeries. Tr. 68-69. However, Plaintiff's medical records from April of 2017 state that Plaintiff and two co-workers were carrying a heavy object down a ramp. One of the co-workers lost his grip, which caused the second co-worker to lose his grip with one hand, shifting most of the weight of the object onto Plaintiff. Part of the object then rotated and struck Plaintiff in the head. He reported the incident and continued working. His boss sent him to the hospital where he was examined and released later the same day. Tr. 36, 426-427.

Plaintiff indicated he needs a cane and walker when going on long trips and uses a cervical neck brace when sitting, sleeping, and driving. Tr. 17, 75-76, 82, 280, 326. Although he complained of vertigo, he reported that his doctor would not prescribe medication to alleviate the symptoms. Tr. 17, 70, 74-75. He stated he has difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, and using his hands. Tr. 17, 279, 325. Despite such limitations, he confirmed he can go to the post office, go through a drive-thru, shop in a grocery store, prepare meals, and drive approximately 35 miles before having to rest. Tr. 17-18, 76, 277-78, 316. The ALJ concluded that Plaintiff's self-reported activities of daily living were not consistent with his alleged medical symptoms because the listed activities indicate a higher degree of functioning than alleged and were not consistent with the medical evidence. Tr. 17.

7

The ALJ provided a summary of Plaintiff's radiological examinations and surgical history. *Id*. On June 26, 2017, imaging of his cervical spine revealed severe canal narrowing at C6-7 and C5-6, and moderate canal narrowing at C4-5, secondary to spondylosis. Tr. 17, 1069-70. On September 14, 2017, Plaintiff underwent his first surgery, an anterior cervical discectomy and fusion at C5-6 and C6-7. Tr. 17, 356-69, 450-54, 971. On January 15, 2018, Plaintiff obtained a CT of his cervical spine, which revealed postoperative changes, including new canal narrowing at C2-3 and more prominent disc abnormality and canal narrowing at C7-T1. Tr. 17, 1074. On May 15, 2018, as compared to the previous exam, the disc bulging at C4-5 appeared slightly greater and there was screw plate fixation at C5-6 and C6-7 with some canal narrowing. Tr. 17, 1076. On September 27, 2018, imaging noticed similar results with some small central disc protraction at C4-5 and a slightly more prominent disc abnormality at C2-3. Tr. 17, 1084.

On January 2, 2019, Plaintiff underwent a second surgery, which was described as a revision of cervical spinal fusion. Tr. 18, 885-88. Plaintiff received an external simulator due to concern of pseudoarthrosis resulting from the surgery. Tr. 18, 608. Imaging of Plaintiff's cervical spine after the surgery showed lucency surrounding the articular pillar screws bilaterally at C5 and C6 with canal and foraminal narrowing. Tr. 18, 838, 1089, 1091. Additional imaging of Plaintiff's cervical spine in December 2020 showed decompression, instrumentation, and solid-appearing fusion of C5-C6 and C6-C7 with moderate residual central canal stenoses. Tr. 18, 1096. During a consultative examination in 2020, Plaintiff had a limited range of motion in his shoulder with abduction. Tr. 18, 912.

The ALJ noticed Plaintiff's reports of tenderness and reduced range of motion in his cervical spine, despite exhibiting normal sensations, reflexes, and motor strength. Tr. 18, 837, 843, 846, 1101. Generally, it appeared Plaintiff had normal musculoskeletal and neurological

8

findings. Tr. 18, 835, 837-838, 843, 846, 909-10, 1101. The ALJ acknowledged records describing Plaintiff as obese with a body mass index of 39, Tr. 18, 908, 1117, but noted the record did not reflect any significant gait defects. Tr. 18, 861, 908, 914. Additionally, the record contained no evidence of the use of an assistive device, and his treating physician, Dr. Minges, indicated he had no objective weakness on examination and no evidence of a neurological dysfunction correlating to his self-reported complaints. Tr. 18, 1097-98. Dr. Minges noted, however, that it was reasonable for him to experience residual neck and trapezial pain. *Id.* Dr. Minges and a consultative examiner advised Plaintiff that wearing the cervical collar was not medically necessary, which is inconsistent with Plaintiff's testimony that he must wear it when he sits, drives, and sleeps. Tr. 18, 855, 909. The ALJ considered Plaintiff's report of feeling well, and the treatment notes reflected improvement in his cervical spine. Tr. 18, 1097-98, 1127.

The ALJ discussed the opinions of Plaintiff's physician, Dr. Joseph Yazdi. In April and May 2019, Dr. Yazdi completed an Independent Medical Examination ("IME") and limited Plaintiff to no lifting, pushing, or pulling greater than 20 pounds. Tr. 19, 608-16. The ALJ found the stated limitations to be unpersuasive because they appeared to be directly related to the fact that Plaintiff underwent surgery three and a half months prior to the IME. Additionally, the ALJ noted that the IME was written approximately five months prior to Plaintiff's alleged onset date. Tr. 19, 227. The ALJ also found these limitations to be unpersuasive because the record later revealed Plaintiff's own reports of "feeling well" in conjunction with treatment notes indicating improvement in his cervical spine. Tr. 19, 1097-98, 1127. On July 31, 2019, Dr. Yazdi became a treating physician for Plaintiff. Tr. 48. Dr. Yazdi also treated Plaintiff on December 15, 2020 and January 11, 2021. Tr. 58.

In September of 2019, Dr. Yazdi provided a second opinion that Plaintiff could perform no lifting, pushing, or pulling greater than seven pounds and should occasionally wear a cervical collar. Tr. 19, 620-22. The ALJ found these limitations to be somewhat supported by the record because Dr. Yazdi indicated that Plaintiff failed two surgeries based on imaging of his cervical spine and would most likely develop pseudoarthrosis. *Id*. However, the ALJ found that it was not entirely consistent with the overall record because consultative examiner, Dr. Chrysanthy Tsifutis, later wrote: "The claimant brought a neck brace with him which he states he uses for pain and wears always. This examiner does not feel that it is medically necessary based on fusion noted on CT." Tr. 19, 909.

In December of 2019, Dr. Yazdi provided a third opinion that Plaintiff could sit, stand, and walk for one hour; frequently lift and carry up to 20 pounds; frequently bend, stoop, twist, squat, kneel, crouch, crawl, climb stairs, and reach; and occasionally balance, but never climb stairs. Tr. 19, 831-33. *Id.* The ALJ found that these limitations to be unsupported because Dr. Yazdi only noted subjective weakness, not objective weakness, Tr. 19 (citing Tr. 831), and the record generally showed normal musculoskeletal and neurological findings aside from tenderness and reduced range of motion in his cervical spine. *Id.* (citing 835, 837-38, 843, 846, 909-11, 1101).

In December of 2020, Dr. Yazdi opined that Plaintiff could sit and stand for two hours and walk for one hour or less; lift and carry 10 pounds occasionally and 5 pounds frequently; and was unable to balance but could occasionally reach above his head and stoop. Tr. 19, 916-19. Dr. Yazdi estimated Plaintiff would miss work three times or more each month and would be late or leave work early three times each month. Tr. 19, 918. The ALJ found these limitations to be unsupported because Dr. Yazdi only noted that Plaintiff had pain and reduced range of motion,

and did not provide any explanation for his finding that Plaintiff would miss work at least three times per month. Tr. 19, 916-19. The ALJ also found these limitations to be inconsistent with objective medical evidence, which showed that aside from tenderness and reduced range of motion in his cervical spine, he had normal musculoskeletal and neurological findings. *Id.* (citing 835, 837-38, 843, 846, 909-11, 1101).

In September of 2020, Dr. Tsifutis opined that Plaintiff had moderate limitations in lifting and carrying, head movement, climbing, and controls. Tr. 19, 911. She indicated Plaintiff should avoid activities requiring moderate or greater exertion, as well as unprotected heights and driving machinery. *Id.* Dr. Tsifutis noted Plaintiff was observed flexing his neck 40 degrees, but when he was asked to flex his neck, he only moved it 20 degrees. He had full flexion of all of his digits and fully grasped the doctor's fingers as well as a three pound weight; however, when Plaintiff was asked to flex his fingers, he only marginally flexed his finger to about 50% of normal. Dr. Tsifutis "did not feel [Plaintiff's] subjective and objective findings were congruent on this evaluation." Tr. 910-11. The ALJ found that although the limitations were vague, the findings were supported because the record showed decreased range of motion and tenderness in his cervical spine and shoulders. Tr. 19, 912. The ALJ further noted her findings were consistent with objective medical evidence, which showed that aside from tenderness and reduced range of motion in his cervical spine, he had normal musculoskeletal and neurological findings. Tr. 19-20, 835, 837-38, 843, 846, 909-11, 1101.

Similar to the ALJ's analysis of Dr Yazdi's opinion, the ALJ thoroughly reviewed the notes and opinions of Dr. David Minges. In January 2019, Dr. Minges presented his opinion that Plaintiff could return to light duty work with no lifting, pushing, or pulling greater than five pounds; no bending, stooping, or twisting of his neck; no driving commercial vehicles; and

11

needed to wear his cervical collar at all times. Tr. 20, 862. In February 2019, Dr. Minges opined that Plaintiff could perform no lifting, pushing, or pulling greater than 10 pounds; no repetitive bending stooping, or twisting of his neck; but could drive commercial vehicles. Tr. 20, 859. The ALJ found these limitations to be supported by the record at the time because Dr. Minges specifically noted the restrictions were temporary. Tr. 20, 854-62. However, the ALJ explained that these limitations were inconsistent with the record as a whole because the opinion was made prior to Plaintiff's alleged onset date, Tr. 20, 227, and because later treatment notes during the relevant period indicated Plaintiff felt well and had improvement in his cervical spine. Tr. 20, 1097-98, 1127.

In April, May, June, and August of 2019, Dr. Minges opined that Plaintiff could perform light duty restrictions with no lifting, pushing, or pulling greater than 25 pounds, and he could drive commercial vehicles. Tr. 20, 838-39, 844, 847, 850. Again, the ALJ found these limitations to be supported because Dr. Minges noted they were temporary restrictions, but they were inconsistent with the overall medical evidence because the record showed that aside from tenderness and reduced range of motion in his cervical spine, he had normal musculoskeletal and neurological findings. Tr. 20, 835, 837-38, 843, 846, 909-11, 1101.

In February of 2020 and February of 2021, Dr. Minges opined that Plaintiff could return to work at full duty with no permanent restrictions. Tr. 20, 835, 1098. The ALJ found these opinions to be somewhat supported because Dr. Minges noted that Plaintiff did not want to undergo a functional capacity evaluation but had no evidence of any neurological dysfunction. Tr. 20, 835, 1097-98. Dr. Minges observed that Plaintiff had full strength in all muscle groups and demonstrated self-limiting behavior despite improvement of his neurological condition postoperatively in comparison to his preoperative baseline. Tr. 20, 1098. The ALJ found these

12

opinions to be somewhat consistent with the medical evidence due to restrictions based on expected residual pain; for example, Plaintiff had tenderness and reduced range of motion in his cervical spine. Tr. 20, 835, 837-38, 843, 846, 909-11, 1101.

State agency medical consultants, Dr. Nancy Ceaser and Dr. Judee Bland, opined in November of 2020 and January of 2021, at the initial and reconsideration levels, respectively, that Plaintiff could perform medium work. Tr. 20, 109, 119. Both doctors found Plaintiff could frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds. Tr. 20, 106-07, 116-17. They also determined Plaintiff could balance, stoop, kneel, and crouch, as well as occasionally crawl and reach overhead bilaterally, but must avoid even moderate exposure to vibration and hazards. Tr. 20, 108, 118. The ALJ found these limitations to be somewhat supported because Drs. Ceaser and Bland noted Plaintiff's limitations due to his neck fusion, but objective evidence showed no weakness, atrophy, or neurological damage. *Id.* The ALJ determined their limitations to be consistent with Dr. Minges' opinion that Plaintiff demonstrated self-limiting behavior despite demonstrating improvement of his objective neurological condition postoperatively in comparison to his preoperative baseline. Tr. 20, 1098. The ALJ also found greater environmental limitations because of Plaintiff's combination of obesity and cervical degenerative disc disease. Tr. 20; *see, e.g.*, Tr. 868, 1105.

Based on the summary of the medical record above, the ALJ determined that Plaintiff had the RFC to perform medium work with additional exertional limitations. The ALJ noted his finding was supported by the medical evidence as well as Plaintiff's own reports of his daily activities, which establishes Plaintiff had a greater sustained capacity than he asserted. Tr. 20.

Claims filed after March 27, 2017, like Plaintiff's, requires the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security

Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

This Court does not agree with Plaintiff's argument that the ALJ erred in finding Plaintiff could perform medium work with additional exertional limitations related to climbing, reaching, and exposure to environmental hazards. Plaintiff contends the ALJ discounted Dr. Yazdi's opinions without providing sufficient rationale. However, as summarized in detail above, the ALJ addressed each of the five records individually and found they were either outside of the

14

relevant time period, inconsistent with specific records showing improvement, inconsistent with Plaintiff's own report of feeling well, contrary to a consultative examiner's notes suggesting Plaintiff did not require a cervical neck collar, and/or in conflict with treatment notes reflecting normal musculoskeletal and neurological findings. The ALJ also pointed out that in Dr. Yazdi's final December 2020 opinion, he did not indicate whether Plaintiff exhibited objective weakness, and failed to elaborate on why he felt Plaintiff would miss three or more days of work per month. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

Further, in discounting Dr. Yazdi's opined limitations, the ALJ also considered Plaintiff's activities of daily living, such as his ability to shop for groceries and household goods, drive, and prepare meals. Tr. 76, 276-80, 314-16, 908. The ALJ also evaluated the determinations of State agency medical consultants, Drs. Ceaser and Bland, who opined Plaintiff could perform a medium range of work. Tr. 20-21, 105-09, 116-18. Thus, the ALJ's RFC determination was not formulated based on Plaintiff's improvement alone, but on a variety of factors.

Contrary to Plaintiff's arguments, the ALJ appropriately considered the normal examination results within the record. On September 16, 2019, the alleged amended onset date, Plaintiff was described to have a normal gait and solid fusion at C5-6 and C6-7. Tr. 838. Notably, in February of 2020, Dr. Minges had "no reservations in him returning to work at full duty with no permanent restrictions, as he demonstrated a solid union as it pertained to his posterior cervical fusion[.]" Tr. 835. On September 21, 2020, he appeared for an examination in no acute distress; exhibited a normal gait; did not require any ambulatory devices; could walk on his heels and toes without difficulty, tandem walk, and fully squat; rise from a chair without

issue; and get on and off the exam table without assistance. Tr. 908-09. In February of 2021, Dr. Minges affirmatively indicated Plaintiff's "objective neurological improvement postoperatively." Tr. 1097. Because Plaintiff continued to complain of pain, Dr. Minges recommended he undergo a functional capacity evaluation, but Plaintiff refused to do so. Thus, Dr. Minges indicated he could not objectively discern what Plaintiff could or could not do as it pertains to job duties and functional capabilities. Plaintiff bears the responsibility to provide medical evidence to support his allegations regarding the severity of his impairments. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The Court finds it curious that Plaintiff disputes the ALJ's RFC determination when Plaintiff refused to participate in an evaluation by his treating physician which could have supported his claim of disability.

Although Plaintiff appears to argue the medical records support a more restrictive RFC, even if substantial evidence supports an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (if substantial evidence supports the Commissioner's decision, a court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).

The Court finds the ALJ thoroughly discussed the persuasiveness of Dr. Yazdi's opinions and appropriately considered the medical and non-medical evidence in determining the RFC. The Plaintiff bears the burden of proving his RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Substantial evidence in the record as a whole supports the ALJ's determination of Plaintiff's limitations. Where substantial evidence supports the ALJ's decision, it may not be reversed merely because substantial evidence may support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff David Poor's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 7th day of August, 2023.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE